CHRISTOPHER P. RIDOUT (SBN 143931)
  Email: christopher.ridout@zimmreed.com
HANNAH P. BELKNAP (SBN 294155)
  Email: hannah.belknap@zimmreed.com
ZIMMERMAN REED, LLP
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

DAVID N. LAKE (SBN 180775)
  Email: david@lakelawpc.com
LAW OFFICES OF DAVID N. LAKE, APC
16130 Ventura Boulevard, Suite 650
Encino, California 91436
(818) 788-5100 Telephone
(818) 788-5199 Facsimile

*Attorneys for Plaintiffs and
all others similarly situated*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| ROBERT K. RUEGSEGGER, Jr., and GIGI E. RUEGSEGGER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CALIBER HOME LOANS, INC.; U.S. BANK TRUST, N.A. AS TRUSTEE FOR THE LSF9 MASTER PARTICIPATION TRUST; LSF9 MASTER PARTICIPATION TRUST; OCWEN LOAN SERVICING, LLC; WILMINGTON TRUST, N.A.; MTGLQ INVESTORS, LP; ARLP SECURITIZATION TRUST, SERIES 2014-2; RESI WHOLE LOAN IV; INVESCO IV; ALTISOURCE RESIDENTIAL CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD ON PLAINTIFF'S | CASE NO.: 8:17-CV-00872 <br><br> **COMPLAINT (CLASS ACTION)** <br><br> 1. Violation of the California Homeowner Bill of Rights (Cal. Civ. Code § 2920 *et seq.*) <br><br> 2. Violation of the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788 *et seq.*) <br><br> 3. Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) <br><br> 4. Violation of the Real Estate Settlement Practices Act (12 U.S.C. § 2605) <br><br> 5. Violation of the Real Estate Settlement Practices Act (12 U.S.C. |

TITLE THERETO; and DOES 1-20, inclusive,

Defendants.

§ 2605)

6. Violation of the Truth In Lending Act

7. Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*)

(Jury Trial Demanded)

Plaintiffs Robert K. Ruegsegger, Jr. ("Robert") and Gigi E. Ruegsegger ("Gigi") (collectively, "Plaintiffs") bring this Complaint individually and on behalf of all others similarly situated, and allege as follows:

## NATURE OF THE CASE

1.    This case seeks to redress violations of both California and Federal law for and related to (1) the wrongful filing and recording of a Notice of Default ("NOD") against the homes of Class (defined herein) members, including Gigi, and through such filing the initiation of non-judicial foreclosure against her property by persons or entities lacking standing to assert such claims; (2) the wrongful attempt to collect monies on a mortgage debt that the parties seeking to collect do not own and which cannot be validated or substantiated in terms of the nature, extent, or amount of the debt; (3) the knowing and repeated failure on the part of Defendants to timely provide Plaintiffs and other Class members specific documentation substantiating their standing to initiate a non-judicial foreclosure, as well as their ability to validate the amount of mortgage debt allegedly owed under the mortgage loan; and (4) the wrongful attempt to assert an invalid ownership interest in contravention of Class members' clear titles.

## THE PARTIES

2.    Plaintiff Robert K. Ruegsegger, Jr. ("Robert") is, and at all times mentioned herein was, an individual residing in the State of California, County of Orange, and is the former husband of Plaintiff Gigi E. Ruegsegger.

3.     Plaintiff Gigi E. Ruegsegger ("Gigi") is, and at all times mentioned herein was, an individual residing in the State of California, County of Orange, and is the former wife of Gigi is the sole current record owner of the Property, a single family residence, located at 22442 Cassia Ln, Lake Forrest, California 92630, with a legal description of:

PARCEL 1:
LOT 45 OF TRACT NO. 8384, IN THE CITY OF LAKE FOREST, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 390, PAGES 11 TO 13 INCLUSIVE OF MISCELLANEOUS MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:
AN UNDIVIDED 1/55TH INTEREST IN LOT AA THROUGH QQ INCLUSIVE OF SAID TRACT NO. 8384.  EXCEPT THEREFROM FROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND, BUT WITH NO RIGHT OF SURFACE ENTRY AS PROVIDED IN DEEDS OF RECORD.

(collectively, the "Property").

4.     Defendant Caliber Home Loan, Inc. ("Caliber") is, and at all times mentioned herein was, a corporation organized and existing under and pursuant to the laws of the State of Delaware, and doing business in Orange County, California.  From approximately May 2016 to the present time, Caliber was the loan servicer on the mortgage loan and during said time period was acting at the request and on behalf of Defendants U.S. Bank Trust, N.A. and the LSF9 Master Participation Trust.

5.     Defendant U.S. Bank Trust, N.A. ("US Bank") is and at all times herein mentioned was an organization of unknown type doing business in Orange County, California.   On Plaintiffs' information and belief during the acts complained of herein, Defendant US Bank was acting as Trustee for and on behalf of the LSF9 Master Participation Trust and engaged Defendant Caliber to service the loan at their request, on their behalf, and under their instruction and direction.

6.     Defendant LSF9 Master Participation Trust ("LSF9") is, on information and belief, a securitized trust whose place of business is presently unknown to Plaintiffs.  LSF9 purports to be the current legal owner of a Promissory Note executed by Robert Ruegsegger in 2006, secured by a Deed of Trust executed by the Plaintiffs also in 2006.

7.     Defendant Ocwen Loan Servicing, LLC ("Ocwen") is and at all times mentioned herein was a limited liability company organized and existing under and pursuant to the laws of the State of Delaware, with its principal place of business at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409, and was doing business in Orange County, California. From approximately 2012 until approximately May 2016 Ocwen was the loan servicer on the mortgage loan, and was acting at the request and on behalf of Defendant Wilmington Trust, National Association as Trustee for the ARLP 2014-2 Securitized trust and under their instruction and direction.

8.     Defendant Wilmington Trust, N.A. ("Wilmington") is and at all times herein mentioned was an organization of unknown type, which conducted business in Orange County, California.

9.     Defendant MTGLQ Investors, LP ("MTGLQ") is and at all times herein mentioned was limited partnership organized and existing under and pursuant to the laws of the State of Delaware and doing business in Orange County, California.

10.     Defendant ARLP Securitization Trust, Series 2014-2 ("ARLP") is and at all times herein mentioned was an organization of unknown type, which conducted business in Orange County, California.

11.     Defendant Resi Whole Loan IV ("Resi") is and at all times herein mentioned was an organization of unknown type, which conducted business in Orange County, California.

12.     Defendant Invesco IV ("Invesco") is and at all times herein mentioned was an organization of unknown type, which conducted business in Orange County, California.

13.     Defendant Altisource Residential Corporation ("Altisourse") is and at all times herein mentioned was, a corporation organized and existing under and pursuant to the laws of the State of Maryland and doing business in Orange County, California.

14.     Plaintiffs do not know the true names and capacities of the defendants sued herein as DOES 1 through 20 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names.  Plaintiffs are informed and believe and based on such information and belief allege that each of the DOE Defendant is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein.  Plaintiffs will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

15.     Plaintiffs are informed and believe and based on such information and belief allege that Defendants Caliber, US Bank, Ocwen, and Wilmington Trust and DOES Defendants 1 through 20, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein.  Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

**JURISDICTION AND VENUE**

16.     Jurisdiction in this matter is based on 28 U.S.C. § 1332 as there is complete diversity between the parties in that Plaintiffs and Defendants are

1    citizens of different states and the amount in controversy exceeds the sum of

2    $75,000.

3         17.    This Court has personal jurisdiction over Defendants because

4    Defendants conduct business in the State of California, a substantial portion of the

5    wrongdoing alleged by Plaintiffs occurred in the State of California and this

6    District, Defendants have sufficient minimum contacts with and/or otherwise has

7    purposefully availed themselves of the markets of the State of California and this

8    District such that it is fair and just for Defendants to adjudicate this dispute in this

9    District.

10        18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because

11   a substantial part of the events and omissions giving rise to the claims occurred in

12   this District and, as a corporation subject to personal jurisdiction in this District,

13   Defendants conduct business in this District.

14                            **FACTUAL ALLEGATIONS**

15        19.    Foreclosure proceedings in California are regulated by the

16   Homeowner Bill of Rights ("HBOR").  The HBOR became law on January 1,

17   2013 with the goal of ensuring fair lending and borrowing practices for California

18   homeowners.  Codified in the California Civil Code, the "laws are designed to

19   guarantee basic fairness and transparency for homeowners in the foreclosure

20   process."  https://oag.ca.gov/hbor.

21        20.    One protection the HBOR provides is that an entity is prohibited from

22   recording or causing notices of default to be recorded unless "it is the holder of the

23   beneficial interest under the mortgage or deed of trust, the original trustee or the

24   substituted trustee under the deed of trust, or the designated agent of the holder of

25   the beneficial interest."  Cal. Civ. Code 2924(a)(6).  The Section further provides

26   that "[n]o agent of the holder of the beneficial interest under the mortgage or deed

27   of trust, original trustee or substituted trustee under the deed of trust may record a

28   notice of default or otherwise commence the foreclosure process except when

1    acting within the scope of authority designated by the holder of the beneficial

2    interest."

3        21.   The HBOR also requires that, prior to recording or filing documents

4    in connection with a nonjudicial foreclosure, involved parties must take care to

5    review evidence that there is a valid default and a legal right to foreclose.

6    Specifically, California Civil Code Section 2924.17 provides, in relevant portion:

7        (a) [A] notice of default, notice of sale, assignment of a deed of trust, or

8    substitution of trustee recorded by or on behalf of a mortgage servicer in

9    connection with a foreclosure subject to the requirements of Section 2924, or a

10   declaration or affidavit filed in any court relative to a foreclosure proceeding shall

11   be accurate and complete and supported by competent and reliable evidence.

12       (b) Before recording or filing any of the documents described in

13   subdivision(a), a mortgage servicer shall ensure that it has reviewed competent and

14   reliable evidence to substantiate the borrower's default and the right to foreclose,

15   including the borrower's loan status and loan information.

16   Cal. Civ. Code § 2924.17.

17       22.   Simply put, a mortgage servicer must review competent and reliable

18   evidence to ensure that the requirements of Section 2924(a)(6) are met before it

19   records a notice of default and other related documents.  It must have established,

20   based upon its investigation that the party purporting to hold the beneficial interest

21   actually has that beneficial interest and that the trustee recording notices is acting

22   within the scope permitted through the beneficiary's authority.

23       23.   To record a NOD as a predicate to instituting a non-judicial

24   foreclosure in California, the foreclosing party (usually a bank or similar entity)

25   must, at the time it records the NOD and initiates such foreclosure proceedings,

26   validly hold the mortgage note and the beneficial interest under the deed of trust. If

27   the entity does not hold such ownership interest, any recording of the NOD is

28   invalid.  In this case, Defendant Caliber ("Caliber"), presumably at the request and

direction of Defendant U.S. Bank ("US Bank") (themselves acting on behalf of Defendant LSF9 Master Participation Trust ("LSF9")), recorded a NOD on Gigi's and other Class members' homes as the first step towards carrying out a non-judicial foreclosure.  As will be discussed herein, Caliber did this even though the LSF9 Trust did not have the legal standing or authority to do so, given the LSF9 Trust did not own Plaintiff Gigi or other Class members' loans at the time Defendant Caliber recorded the NOD.

24.    Defendant LSF9 held itself out as the owner of the underlying Promissory Note and the holder of the beneficial interest under the deed of trust. Ostensibly, it held the interest by virtue of assignments of the original Promissory Note and Deed of Trust from the original lenders.  In truth, LSF9 was not the owner of or in possession of the original Promissory Note or a holder of the beneficial interest under Plaintiffs' or other Class members' deed of trust because the Promissory Note and Deed of Trust, and accordingly the beneficial interest under such instruments was never properly and legally transferred from the original lender to LSF9.

25.    Moreover, Defendant Caliber, as servicer of the loan and acting as the agent for and at the behest of Defendants US Bank and LSF9, had an affirmative duty and obligation under the law to independently review competent and reliable evidence (including at a minimum the Note and Deed of Trust Assignment and Endorsement Chain, as well as the mortgage loan file received from prior loan servicers) to ensure that the LSF9 Trust was, in fact, the valid legal owner and thus entitled to direct them to actually record the NOD. Such review, which US Bank and LSF9 should have insisted upon, would have revealed that there were significant gaps and discrepancies in the respective Note and Deed of Trust Assignment and Note Endorsement chains of title, and, as a result, that real questions existed as to whether or not the LSF9 Trust was, in fact, the valid owner

1   of the underlying Promissory Note and the holder of the beneficial interests at the
2   time the NOD was recorded.

3        26.   Based on information and belief, Caliber possessed information that
4   (1) the prior servicer, Ocwen, had itself determined that there were serious gaps in
5   the chain of title placing legal ownership of the loan in dispute; (2) that Ocwen had
6   "recreated" documents after-the-fact in the form of so-called "corrective
7   assignments" in an attempt to legitimize and sanitize an otherwise invalid and
8   toxic chain of title on the loan; and (3) that Ocwen, just before transferring
9   servicing to Caliber, in recognition that their unusual and suspect activities was
10   only serving to highlight that the chain of title was incomplete and thus the true
11   ownership of the loan in question, rescinded and withdrew the Notice of Default
12   they had recorded.

13        27.   Plaintiffs, as was their statutory right, also requested that Defendant
14   Caliber provide them with documents substantiating the legal ownership by LSF9
15   of the Note and Deed of Trust, including the Note and Deed of Trust Assignment
16   and Endorsement Chain on the loan – a request that Caliber only partially
17   complied with and not within the time limits imposed by law, in violation of the
18   provisions of the Real Estate Settlement Practices Act (RESPA) 12 U.S.C. §2605.
19   Eventually Caliber conceded this failure in writing.  Caliber also admitted, in
20   writing, that it too had found gaps in the documented chain of title, but remarkably
21   advised that it intended to "recreate" endorsement chains and "corrective"
22   assignments in order to fill in the acknowledged gaps.  With full knowledge of
23   these legal deficiencies and the absence of competent and reliable evidence of the
24   legal authority of LSF9 or their representative Defendant US Bank to do so,
25   Caliber still proceeded to record a NOD on Gigi's home. Caliber's knowing and
26   intentional actions go far beyond simple negligence. Caliber has abrogated and
27   rejected its affirmative obligations under law.  In failing to fulfill and discharge
28   their statutory obligations, Defendants violated the HBOR and subjected Gigi to

1    the wrongful filing of a NOD on her home and thus the wrongful initiation of a

2    non-judicial foreclosure.

3         28.    Further, as the mortgage loan was not owned by LSF9, Defendants

4    Caliber, US Bank and LSF9 lacked the legal authority to collect on the alleged

5    debt.  Nevertheless, they continued to send mortgage statements to Plaintiffs and

6    other Class members in an attempt to collect on a debt not owed to LSF9. Caliber

7    also sought to collect on a debt they could not validate, nor could they ascertain

8    how much was supposedly owed under said debt, as they conceded in writing that

9    they lacked a full and complete payment history on the loan (documentation

10   needed for Caliber, US Bank, and LSF9 to validate the amount of the alleged

11   debt).  Rather, Caliber relied on what they had received from the prior servicer,

12   Ocwen, albeit incomplete. Caliber then, despite acknowledging that there were

13   unexplained financial discrepancies in the debt validation statements, mortgage

14   statements and other demands for payment they had sent to Plaintiffs and other

15   Class members on behalf of Defendants US Bank and LSF9, nevertheless

16   attempted to collect the debt as if it had the authority to do so and as if the amount

17   was validated and undisputed.  These actions violated California's Rosenthal Fair

18   Debt Collection Practices Act ("Rosenthal Act") and provisions of the federal Fair

19   Debt Collection Practices Act ("FDCPA").

20        29.    Further, under the provisions of RESPA, 12 U.S.C. § 2605, both

21   Caliber and Ocwen had affirmative duties to timely respond to any Qualified

22   Written Requests for information received from Plaintiffs. Caliber and Ocwen

23   repeatedly failed to do this, in direct violation of their duties under RESPA.

24        30.    Defendants also failed to honor their obligations under the Federal

25   Truth in Lending Act (TILA) 15 U.S.C. § 1641(g) (specifically Section 131g, as

26   implemented by Regulation Z, 12 CFR §1026.39) by failing to disclose to

27   Plaintiffs each sale or transfer of their mortgage loan.

28

31.     Additionally, in ignoring their legal duties under the HBOR, the Rosenthal Act and the FDCPA, RESPA, and TILA, Defendants engaged in unlawful acts in violation of the Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200 *et seq*.

32.     The notices of default issued in connection with Plaintiffs and other Class members' nonjudicial foreclosures were recorded as part of the public record by or on behalf of Defendant Caliber, the loan servicer.

33.     In violation of Section 2924.17(a), the notices of default recorded in connection with Plaintiffs and other Class members' nonjudicial foreclosures were not accurate, complete or supported by competent and reliable evidence.

34.     In violation of Section 2924.17(b), Caliber failed to ensure that it had first reviewed competent and reliable evidence, including Plaintiffs and other Class members' loan information—who the true beneficial interest holders of the Promissory Notes and Deed of Trusts were, as well as the legitimacy of pre-requisite and necessary substitution of trustee documents—to substantiate its right to foreclose on behalf of Defendant US Bank (on behalf of LSF9).

35.     On Plaintiffs' information and belief, based on servicing industry standards, at the time that Caliber took over the servicing of the loan, Caliber was provided by Ocwen with its entire loan file which should have included, but would not be limited to, the original Note (with a full set of endorsements to the current purported investor), the Deed of Trust (along with all assignments from the date of loan origination to the current time), a full and complete payment history on the loan from its inception, and full correspondence files between the Plaintiffs and Ocwen regarding the loan.

36.     On February 9, 2017, unbeknownst to Plaintiffs, a Notice of Default and Election to Sell Under Deed of Trust, with a supporting Declaration of Compliance was recorded by Caliber.  Included in the NOD was a statement by the Trustee's representative attesting that the loan servicer of Plaintiffs loan,

Caliber, had fulfilled its obligations under California Civil Code § 2923.55, (the fulfillment of which is a necessary predicate to being able to legally record a NOD in California) by executing a Declaration of Compliance to the Notice of Default, which Declaration was attached and recorded. A review of the Declaration of Compliance reveals however that it was not executed by Caliber, the present loan servicer, on behalf of the present purported owner of the loan, LSF9.  Rather, the Declaration was executed back in August 2015 by Ocwen, a predecessor servicer, on behalf of the ARLP trust. Further, this Declaration of Compliance was regarding a former NOD recorded by Ocwen and subsequently rescinded. As such both the Trustees attestation as well as the Declaration of Compliance attached to the NOD were invalid, as they failed to comply with the provisions of California Civil Code § 2923.55, and California Civil Code § 2924.17(a), rendering the NOD void. The Notice of Default was not mailed until February 27, 2017.

37.     Pursuant to Paragraph 22 of the Deed of Trust, any foreclosure related activity including the recording of a NOD can only be taken after the borrower has been sent a Notice of Intent to Accelerate and the period of time for the borrower to cure has expired.  Accordingly, the filing by Caliber of the NOD on the property on February 9, 2017, prior to receipt of any Notice of Intent to Accelerate, was premature and invalid under the terms of the Deed of Trust.

38.     On March 1, 2017, Caliber sent Plaintiffs a Notice of Default and Intent to Accelerate the loan.  Pursuant to Paragraph 22 of the Deed of Trust, this Notice must be sent to a borrower and the period of time to cure the breach must pass before any act related to non-judicial foreclosure can be initiated, including the recording of a Notice of Default.  Thus, the recording of the NOD in February 9, 2017 was invalid and violated the terms of the Deed of Trust.

39.     Ironically, the Notice of Default and Intent to Accelerate also advised Plaintiffs that they had the right to receive from Caliber copies of any assignments of the borrower's mortgage or deed of trust as well as a copy of the borrower's

payment history since the time when the borrower was less than sixty (60) days past due -- the very same documents that Plaintiffs had been requesting of Caliber for over six (6) months and which Caliber had still never provided.

40.     On March 3, 2017, Caliber sent Plaintiffs' representative a letter in response to his of February 10, 2017.  The response ignored the new issues raised in Plaintiffs' February 10, 2017 QWR, and incorrectly advised Plaintiffs that Caliber had "addressed all of your concerns in our previous correspondence, dated November 10, 2016 and November 16, 2016".  As of this point in time, Caliber had still not provided Plaintiffs with copies of all assignments representing a full assignment chain, the results of Caliber's complete title examination or a full and complete copy of the payment history of the loan ad a detailed breakdown of the amounts claimed to be due under the loan. Once again, the statutory time period in which Caliber was obligated to respond pursuant to RESPA has expired.

## CLASS ALLEGATIONS

41.     Plaintiffs bring this action on behalf of themselves and as a class action pursuant to the provisions of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  Plaintiffs seek to represent a class initially defined as:

> All California residents whose property was subject to nonjudicial foreclosure proceedings initiated by Caliber on behalf of US Bank and/or LSF9.

42.     Plaintiffs also seek to represent a class initially defined as:

> All California residents who are the borrowers/trustors under Deed of Trusts of which the beneficial interest was purportedly held by US Bank as Trustee for LSF9.

43.     Plaintiffs further seek to represent a class initially defined as:

> All California residents who are the borrowers/trustors of Promissory Notes owned by Resi, Alfisource, Wilmington Trust, ARLP, and/or Invesco and serviced by Ocwen.

(All classes collectively, the "Class".)

44.     The "Class Period" starts on January 1, 2013, or the earliest time permitted by the claims asserted herein, and continues through the present and the date of judgment.   Specifically excluded from the Class are: (a) any officers, directors, or employees of Defendants; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

45.     Plaintiffs reserve the right to modify, expand, or amend the above Class definition or seek certification of a class that is defined differently than above before any court determines whether certification is appropriate following discovery.

46.     *Numerosity*.  Members of the Class are so numerous that joinder of all members is impracticable.  While the number of Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe that the Class numbers at least in the thousands.

47.     *Ascertainability*.   The community of interest among the Class members in the litigation is well defined and the proposed Class is ascertainable from objective criteria.  The identities of Class members can be obtained from Defendants' business records.  Class members can be notified of the pendency of Plaintiffs' Complaint by mail or published notice.  If necessary to preserve the case as a class action, the Court can redefine the Class and/or create subclasses.

48.     *Commonality and Predominance*.  There is a well-defined community of interest in the questions of law and fact affecting the parties to be represented in this action.  Common questions of law and fact that exist as to all members of the Class and predominate over any questions affecting only individual members, include, but are not limited to:

(a) Whether Defendants violated the California Homeowner Bill of Rights, California Civil Code Section 2924.6 by recording or causing

to be recorded a notice of default when it was not the legal holder of the beneficial interest;

(b) Whether Defendants violated the California Homeowner Bill of Rights, California Civil Code Section 2924.17(b) by failing to review competent and reliable evidence to substantiate the borrower's default and the right to foreclose;

(c) Whether Defendants violated the Rosenthal Act;

(d) Whether Defendants violated RESPA;

(e) Whether Defendants violated TILA;

(f) Whether Plaintiffs and Class members are entitled to damages and/or restitution and the proper measure of that loss;

(g) Whether Plaintiffs and Class members are entitled to an injunction;

(h) The appropriate Class-wide measure of damages.

49.    *Typicality*. Each Plaintiff is a member of the Class and each's claims are typical of the claims of members of the Class.  Typical of members of the Class, Plaintiffs' home were subject to a Notice of Default by Defendants during the Class Period.  Plaintiff and Class members each sustained, and will continue to sustain, damages arising from Defendants' wrongful conduct, as alleged more fully herein. Plaintiffs' claims are founded on the same legal theories as those of the Class.

50.    *Adequacy of Representation*.  Each Plaintiff is an adequate representative of the Class because his and her interests do not conflict with the interests of the other Class members and because Plaintiffs have retained counsel competent and experienced in complex class action and consumer litigation, including substantial experience in the types of claims alleged in this Complaint. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

51.   *Declaratory and Injunctive Relief.*  Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class.

52.   *Superiority of Class Adjudication.*  The certification of a class in this action is superior to the litigation of a multitude of cases by members of the Class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.  Moreover, there are Class members who are unlikely to join or bring an action due to, among other reasons, their reluctance to sue Defendants and/or their inability to afford a separate action.  Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the Class members in relation to the benefits received.  The damages, restitution, and other potential recovery for each individual member of the Class are modest, relative to the substantial burden and expense of individual prosecution of these claims. Given the amount of the individual Class members' claims, few, if any, Class members could afford to seek legal redress individually for the wrongs complained of herein.   Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

53.   In the alternative, the above-referenced Class may be certified because:

a. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims

1    which would establish incompatible standards of conduct for

2    Defendants;

3    b.  The prosecution of separate actions by individual members of the

4        Class would create a risk of adjudications which would as a

5        practical matter be dispositive of the interests of other members

6        of the class who are not parties to the adjudications, or which

7        would substantially impair or impede the ability of other Class

8        members to protect their interests; and,

9    c.  Defendants have acted or refused to act on grounds generally

10       applicable to the Class, thereby making appropriate final and

11       injunctive relief with respect to the Class.

12                        **FIRST CLAIM FOR RELIEF**

13          **(Violation of the California Homeowner Bill of Rights,**

14                     **Cal. Civ. Code § 2920 et seq.)**

15      (By Plaintiffs Against Defendants Caliber, US Bank and LSF9)

16       54.    Plaintiffs incorporate all preceding and succeeding allegations by

17   reference as if fully set forth herein.

18       55.    Plaintiffs bring this claim individually and on behalf of the Class

19   pursuant to the California Homeowner Bill of Rights, California Civil Code

20   Section 2920.5 *et seq*. (the "HBOR").

21       56.    Plaintiffs and all other Class members are "borrowers" as that term is

22   defined by the HBOR.

23       57.    Section 2924(a)(6) of the California Civil Code provides that no

24   entity shall record or cause a notice of default to be recorded unless "it is the

25   holder of the beneficial interest under the mortgage or deed of trust, the original

26   trustee or the substituted trustee under the deed of trust, or the designated agent of

27   the holder of the beneficial interest."  The Section further provides that "No agent

28   of the holder of the beneficial interest under the mortgage or deed of trust, original

trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest."

58.    Section 2924.17(a) of the California Civil Code mandates "A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence."

59.    Section 2924.17(b) of the California Civil Code provides that "Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information."

60.    Section 2923.55 of the California Civil Code provides in pertinent part that a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may *not* record a notice of default pursuant to Section 2924 until thirty (30) days after contact is made with the borrower to assess the borrower's financial condition and explore options for the borrower to avoid foreclosure or thirty (30) days after satisfying the due diligence requirement with regard to contacting or attempting to contact the borrower.  In addition, before recording a notice of default, the mortgage servicer must also notify the borrower that they may request a copy of the promissory note, the deed of trust, all assignments of the deed of trust and a copy of the payment history on the loan.

61.    As alleged in detail above, Defendants' actions are contrary to the provisions and requirements of the HBOR. In addition to their own admissions regarding the absence of competent and reliable evidence, a simple review of the

assignment chain, the endorsement chain, the payment history, the prior recorded and rescinded notices of default, the loan file received from the predecessor servicer (Ocwen), correspondence received from Plaintiffs and other Class members, and even a basic comparison of signatures on said documents would have revealed significant gaps in the assignment chain and the endorsement chain as well as signature irregularities on necessary title documents such that Defendants lacked competent and reliable evidence demonstrating that they had the right, power or authority to record notices of default or otherwise commence foreclosure proceedings on Plaintiffs' and other Class members' property.

62.   Defendants, prior to taking the foreclosure related actions herein alleged, did not ensure, as required by statute, that they had reviewed competent and reliable evidence substantiating their legal authority to record, either themselves or as the beneficiary's agent, the Notice of Default.  Indeed, at the time the NOD was recorded, in addition to the foregoing failures, Defendants also knew or from a review of competent and reliable evidence should have known, that the NOD was recorded despite the failure to first provide Plaintiffs and other Class members with the required Notice of Default and Intent to Accelerate and the requisite time to cure the alleged default as required by the applicable DOTs.

63.   In addition, a review of the Declaration of Compliance attached to Plaintiffs' NOD reveals that it was neither accurate nor complete.  First, it was not executed by Caliber, the then loan servicer, on behalf of the then purported owner of the loan, LSF9.  Instead, the declaration was executed back in August 2015 by Ocwen, the predecessor servicer to Caliber, and was executed not on behalf of LSF9, but on behalf of another entity altogether, the ARLP trust. Second, this declaration was executed in connection with and as support for a wholly separate and prior NOD that was recorded by and subsequently rescinded by Ocwen. The recording of the present NOD by Caliber was required to be accurate and complete, and supported by competent and reliable evidence. Caliber also had to

1   comply with the provisions contained within Civil Code section 2923.55. They did

2   neither.   On information and belief, the Declarations of Compliance attached to

3   the NOD's of other Class members are likewise inaccurate and/or incomplete.

4        64.   Caliber and LSF9 cannot support the current NOD with an almost

5   two (2) year old declaration executed by a different servicing entity on behalf of a

6   different purported owner.   Nor can Caliber and LSF9 support the current NOD

7   with an almost two (2) year old declaration that supported a now rescinded NOD.

8   There is no basis for the Trustee's attestation or any possible way that the loan

9   servicer, Caliber, fulfilled its obligations under Civil Code § 2923.55, and Civil

10  Code Section 2924.17.  For these reasons, the recording of the NOD by Caliber on

11  behalf of LSF9 was on its face void and invalid. Despite these serial and material

12  HBOR violations, and despite the lack of competent and reliable evidence,

13  Defendants nevertheless proceeded to record the NOD.  On information and belief,

14  these activities were conducted on a Class-wide basis.

15       65.   Although required to do so prior to recording a notice of default,

16  Caliber failed to provide Plaintiffs and other Class members with notice of their

17  right to request a copy of the promissory note, the deed of trust, all assignments of

18  the deed of trust and a copy of the payment history on the loan.  Nor did Caliber

19  attempt to contact the Plaintiffs or other Class members to assess their financial

20  condition as required to be attested to in the Declarations in support of the NODs.

21       66.   Defendants' actions as alleged herein constitute material violations of

22  the HBOR and were carried out by Defendants intentionally, recklessly or were

23  the result of willful misconduct by Defendants.  Defendants admitted that there

24  were gaps in the chain of title and were aware that there was a myriad of other

25  problems, which made were at odds with the requirement that they have competent

26  and reliable evidence.   Additionally, had Defendants reviewed competent and

27  reliable evidence before recording the NOD, they would have seen the errors and

28  irregularities in the documents and ownership and would have recognized they did

1   not have the legal right or standing to take the actions they took. They would have

2   also realized that they had not complied with the provisions of Civil Code section

3   2923.55 and accordingly lacked the ability to record the NOD.

4       67.   Plaintiffs have suffered actual economic damages as a direct and

5   proximate result of Defendants' misconduct.  Accordingly, Plaintiffs are entitled to

6   all relief provided by the HBOR, including attorneys' fees. *See* Cal. Civ. Code §

7   2924.12(I).   In addition, Plaintiffs are entitled to injunctive relief pursuant to

8   Section 2924.12(a)(2), with said injunction remaining in place until such time as

9   the Defendants have corrected and remedied the various violations of the HBOR

10   as set forth herein.

11       68.   Defendants' actions as alleged herein constitute material violations of

12   the HBOR and were carried out by Defendants intentionally, recklessly or were

13   the result of willful misconduct by Defendants.   Defendants admitted that there

14   were gaps in the chain of title and were aware that there was a myriad of other

15   problems, which made were at odds with the requirement that they have competent

16   and reliable evidence.   Additionally, had Defendants reviewed competent and

17   reliable evidence before recording the NODs, they would have seen the errors and

18   irregularities in the documents and ownership and would have recognized they did

19   not have the legal right or standing to take the actions they took. They would have

20   also realized that they had not complied with the provisions of Civil Code section

21   2923.55 and accordingly lacked the ability to record the NODs.

22       69.   Plaintiffs and all Class members have suffered actual economic

23   damages as a direct and proximate result of Defendants' misconduct.

24   Accordingly, Plaintiffs and Class members are entitled to all relief provided by the

25   HBOR, including attorneys' fees. *See* Cal. Civ. Code § 2924.12(I).   In addition,

26   Plaintiffs and Class members are entitled to injunctive relief pursuant to Section

27   2924.12(a)(2), with said injunction remaining in place until such time as the

28

1  defendants have corrected and remedied the various violations of the HBOR as set

2  forth herein.

3  ### SECOND CLAIM FOR RELIEF

4  **(Violation of Rosenthal Fair Debt Collection Practices Act)**

5  (By Plaintiffs Against Defendants Caliber, US Bank, and LSF9)

6  70.   Plaintiffs incorporate all preceding and succeeding allegations by

7  reference as if fully set forth herein.

8  71.   Plaintiffs bring this claim individually and on behalf of the Class

9  against Defendants Caliber, US Bank, and LSF9 only.

10  72.   California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal

11  Act") prohibits creditors and debt collectors from, among other things, making

12  false, deceptive, or misleading representations in an effort to collect a debt. Cal.

13  Civ. Code Section 1788 *et seq*.

14  73.   Plaintiffs and all Class members are "debtor[s]" as that term is

15  defined by California Civil Code Section 1788.2(h).  Under the Rosenthal Act, a

16  "debt collector" is defined as "any person who, in the ordinary course of business,

17  regularly, on behalf of himself or herself or others, engages in debt collection." *Id.*

18  at § 1788.2(c).   Defendants are "debt collectors" as that term is defined in

19  California Civil Code Section 1788.2(c) because they regularly sent or directed to

20  be sent mortgage bills, communications and other notices seeking to collect money

21  from Plaintiffs and Class members and acted as the servicer(s) of Plaintiffs' and

22  Class members' mortgage loans.

23  74.   California Civil Code Section 1788.17 provides that "every debt

24  collector collecting or attempting to collect a consumer debt shall comply with the

25  provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the

26  remedies in Section 1692k of, Title 15 of the United States Code."  Cal. Civ. Code

27  § 1788.17.  Thus, the Rosenthal Act incorporates the provisions of the federal Fair

28  Debt Collection Practices Act (hereinafter "FDCPA") and a plaintiff may state a

1    claim for violation of the Rosenthal Act by showing that a defendant violated any

2    of several provisions of the FDCPA.

3        75.    Section 1692e of the FDCPA provides that a debt collector may not

4    use any "false, deceptive, or misleading representation or means in connection

5    with the collection of any debt including: (2) The false representation of (A) the

6    character, amount or legal status of any debt…." 15 U.S.C. § 1692e(2)(A).

7    Section 1692e(10) further provides that "[t]he use of any false representation or

8    deceptive means to collect or attempt to collect any debt..." is conduct in violation

9    of that Section. *Id.* at § 1692e(10).

10       76.    On information and belief, and as alleged herein, Defendants knew or

11   had reason to know that documents and information, including but not limited to

12   the assignments of the deed of trust and endorsements of the Promissory Note,

13   were not valid to establish their legal right to collect payments from Plaintiffs.

14       77.    Defendants, by their own admission, knew: a) that there were

15   discrepancies between the amounts stated as due in their debt validation letters and

16   the monthly mortgage statements sent to Plaintiffs; and b) that there were

17   discrepancies in the amounts they were seeking to collect based on alleged fees

18   and costs that had been waived according to their own payment history.

19   Consequently, Caliber knew that it clearly lacked the ability to accurately know

20   and thus validate the nature and true amount of the alleged debt owed by Plaintiffs.

21       78.    On information and belief, Defendants knew a) that there were

22   discrepancies between the amounts stated as due in their debt validation letters and

23   the monthly mortgage statements sent to Class members; and b) that there were

24   discrepancies in the amounts they were seeking to collect based on alleged fees

25   and costs that had been waived according to their own payment history.

26   Consequently, Caliber knew that it clearly lacked the ability to accurately know

27   and thus validate the nature and true amount of the alleged debt owed by Class

28   members.

79.    Without the ability to establish their legal right to collect payments, or to validate the nature and true amount of the debt allegedly owed by Plaintiffs and Class members, Defendants have engaged in debt collection activities in violation of the Rosenthal Act, California Civil Code Section 1788.10 *et seq*., and by implication, the FDCPA, by, among other things: (a) misstating the character, amount or legal status of the debt they collected or sought to collect from Plaintiffs and Class members; (b) threatening to take or taking action (filing notices of default to initiate non-judicial foreclosure) that cannot be legally taken given their inability to establish their authority to do so; and (c) using false representations or deceptive means (representing they had standing to take the actions they were taking when the rights they seek to enforce were not assigned to them) to collect or attempt to collect the debt from Plaintiffs and all other Class members.

80.    As alleged herein Defendants also falsely represented the character and amount of debts to the Plaintiffs and Class members and used false representations or deceptive means to collect or attempt to collect those debts in that they could not demonstrate that they had the legal right to collect any debt on behalf of the purported owner of the underlying Note or Deed of Trust on Plaintiffs' and other Class members' homes, nor could they validate and confirm the accuracy of the debt amounts allegedly owed.

81.    Plaintiffs and all other Class members reasonably relied at the time on Defendants' representations of the character, amount, and validity of the debt allegedly owed and the Defendants' authority to act in the capacity of debt collectors on behalf of the legal owner of the Promissory Note.

82.    Defendants' acts as described above were done willfully and knowingly within the meaning of California Civil Code Section 1788.30(b).  As alleged herein, Defendants knew they did not have the documentation necessary and required to establish their right to collect payments from Plaintiffs and all other Class members, to initiate foreclosure on Plaintiffs' and other Class

members' properties, or to validate the nature and amount of the debt allegedly owed, yet they continued to do so as though they did.

83.     The payments demanded by Defendants on the mortgage purportedly owed by Plaintiffs and Class members are "debt[s]" within the meaning of California Civil Code Section 1788.2(d), because they are "money, property or their equivalent which [are] due or owing or alleged to be due or owing from a natural person to another person."

84.     As a result of Defendants' actions herein, Plaintiffs and all other Class members have been damaged and Plaintiffs, on behalf of all Class members, seek all available relief under the California Rosenthal Fair Debt Collection Practices Act.  Pursuant to California Civil Code Section 1788.17, Plaintiffs and all other Class members are entitled to recover actual damages sustained because of Defendants' violations of the Rosenthal Act, which incorporates the FDCPA. Such damages include, without limitation, monetary losses and damages. Additionally, because Defendants' violations of the Rosenthal Act were committed willingly and knowingly, Plaintiffs and all other Class members are entitled to recover statutory damages in the amount of $1,000 for each violation.  *See* Cal. Civ. Code § 1788.17 and 15 U.S.C. 1692k(a)-(c).

85.     Pursuant to California Civil Code Section 1788.17 and Section 1629k of Title 15 of the United States Code, Plaintiffs, on behalf of the Class, are entitled to recover all attorneys' fees, costs, and expenses incurred in the bringing of this action.

### THIRD CLAIM FOR RELIEF

### (Violation of Rosenthal Fair Debt Collection Practices Act)

(By Plaintiffs Against Defendants Ocwen, Invesco, Wilmington Trust, and ARLP)

86.     Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

87.     Plaintiffs bring this claim individually and on behalf of the Class against Defendants Ocwen, Invesco, Wilmington Trust, and ARLP only.

88.     California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") prohibits creditors and debt collectors from, among other things, making false, deceptive, or misleading representations in an effort to collect a debt. Cal. Civ. Code Section 1788 *et seq.*

89.     Plaintiffs and all Class members are "debtor[s]" as that term is defined by California Civil Code Section 1788.2(h).  Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." *Id.* at § 1788.2(c).  Defendants are "debt collectors" as that term is defined in California Civil Code Section 1788.2(c) because they regularly sent or directed to be sent mortgage bills, communications and other notices seeking to collect money from Plaintiffs and Class members and acted as the servicer(s) of Plaintiffs' and Class members' mortgage loans.

90.     California Civil Code Section 1788.17 provides that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code." Cal. Civ. Code § 1788.17.  Thus, the Rosenthal Act incorporates the provisions of the federal Fair Debt Collection Practices Act (hereinafter "FDCPA") and a plaintiff may state a claim for violation of the Rosenthal Act by showing that a defendant violated any of several provisions of the FDCPA.

91.     Section 1692e of the FDCPA provides that a debt collector may not use any "false, deceptive, or misleading representation or means in connection with the collection of any debt including: (2) The false representation of (A) the character, amount or legal status of any debt…." 15 U.S.C. § 1692e(2)(A). Section 1692e(10) further provides that "[t]he use of any false representation or

deceptive means to collect or attempt to collect any debt..." is conduct in violation of that Section. *Id.* at § 1692e(10).

92. On information and belief, and as alleged herein, Defendants knew or had reason to know that documents and information, including but not limited to the assignments of the deed of trust and endorsements of the Promissory Note, were not valid to establish their legal right to collect payments from Plaintiffs and all other Class members.

93. Without the ability to establish their legal right to collect payments, or to validate the nature and true amount of the debt allegedly owed by Plaintiffs and Class members, Defendants have engaged in debt collection activities in violation of the Rosenthal Act, California Civil Code Section 1788.10 *et seq.*, and by implication, the FDCPA, by, among other things: (a) misstating the character, amount or legal status of the debt they collected or sought to collect from Plaintiffs and all other Class members; (b) threatening to take or taking action (filing a notices of default to initiate non judicial foreclosures) that cannot be legally taken given their inability to establish their authority to do so; and (c) using false representations or deceptive means (representing they had standing to take the actions they were taking when the rights they seek to enforce were not assigned to them) to collect or attempt to collect the debt from Plaintiffs and all other Class members.

94. As alleged herein, Defendants also falsely represented the character and amount of debts to the Plaintiffs and Class members and used false representations or deceptive means to collect or attempt to collect those debts in that they could not demonstrate that they had the legal right to collect any debt on behalf of the purported owner of the underlying Note or Deed of Trust on Plaintiff and other Class members' homes. Nor could they validate and confirm the accuracy of the debt amounts allegedly owed.

95.     Plaintiffs and all other Class members reasonably relied at the time on Defendants' representations of the character, amount, and validity of the debt allegedly owed and the Defendants' authority to service the debt and collect payments on behalf of the legal owner of the Promissory Note.

96.     Defendants' acts as described above were done willfully and knowingly within the meaning of California Civil Code Section 1788.30(b).  As alleged herein, Defendants knew they did not have the documentation necessary and required to establish their right to collect payments from Plaintiffs and other Class members, to initiate foreclosure on Plaintiffs' and all other Class members' properties, or to validate the nature and amount of the debt allegedly owed, yet they continued to do so as though they did.

97.     The payments demanded by Defendants on the mortgage purportedly owed by Plaintiffs and Class members are "debt[s]" within the meaning of California Civil Code Section 1788.2(d), because they are "money, property or their equivalent which [are] due or owing or alleged to be due or owing from a natural person to another person."

98.     As a result of Defendants' actions herein, Plaintiffs and all other Class members have been damaged and Plaintiffs, on behalf of all Class members, seek all available relief under the California Rosenthal Fair Debt Collection Practices Act.  Pursuant to California Civil Code Section 1788.17, Plaintiffs and all other Class members are entitled to recover actual damages sustained because of Defendants' violations of the Rosenthal Act, which incorporates the FDCPA. Such damages include, without limitation, monetary losses and damages. Additionally, because Defendants' violations of the Rosenthal Act were committed willingly and knowingly, Plaintiffs and all other Class members are entitled to recover statutory damages in the amount of $1,000 for each violation.  *See* Cal. Civ. Code § 1788.17 and 15 U.S.C. 1692k(a)-(c).

99.     Pursuant to California Civil Code Section 1788.17 and Section 1629k of Title 15 of the United States Code, Plaintiffs, on behalf of the Class, are entitled to recover all attorneys' fees, costs, and expenses incurred in the bringing of this action.

## FOURTH CLAIM FOR RELIEF
### (Violation of the Real Estate Settlement Practices Act, (RESPA) 12 U.S.C. § 2605

(By Plaintiffs Against Ocwen)

100.   Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

101.   Plaintiffs bring this claim individually and on behalf of the Class against Defendant Ocwen only.

102.   Ocwen is a servicer as defined in 15 U.S.C. § 2605(e)(i)(2). Plaintiffs, as detailed herein, and Class members, on information and belief, sent numerous written communications to Ocwen which were Qualified Written Requests ("QWR") as defined in 12 U.S.C. § 2605(e)(B)(i).

103.   Pursuant to the requirements of RESPA, Ocwen was required to acknowledge receipt of each of Plaintiffs' and Class members' QWR's within five (5) days of their receipt and to take action with respect to Plaintiffs' and other Class members' inquiries within thirty (30) days of their receipt.  In addition, Ocwen was required under RESPA to respond within ten (10) business days to Plaintiffs' request for the name and contact details of the owner of the loan. Ocwen did none of this.

104.   Plaintiffs and other Class members, as a result of the Defendant's violations of RESPA and its failures to respond as required as set forth herein, suffered actual damages and are entitled to recover their actual damages from Ocwen.  In addition, due to Defendant's pattern and practice of RESPA violations, Plaintiffs and other Class members are also entitled to recover additional damages

1    of up to two thousand dollars ($2,000) for each violation, as well as attorneys' fees
2    and costs.

3    **FIFTH CLAIM FOR RELIEF**
     **(Violation of the Real Estate Settlement Practices Act,**
4    **(RESPA) 12 U.S.C. § 2605**

5    (By Plaintiffs Against Caliber)

6    105.   Plaintiffs incorporate all preceding and succeeding allegations by
7    reference as if fully set forth herein.

8    106.   Plaintiffs bring this claim individually and on behalf of the Class
9    against Defendant Caliber only.

10   107.   Caliber is a servicer as defined in 15 U.S.C. § 2605(e)(i)(2).
11   Plaintiffs, as detailed herein, and, on information and belief, Class members, sent
12   numerous written communications to Caliber which were QWR's as defined in 12
13   U.S.C. § 2605(e)(B)(i).

14   108.   Pursuant to the requirements of RESPA, Caliber required to
15   acknowledge receipt of each of Plaintiffs and other Class members' QWR's within
16   five (5) days of their receipt and to take action with respect to Plaintiffs and other
17   Class members' inquiries within thirty (30) days of their receipt.  Caliber did none
18   of this regarding Plaintiffs.  On information and belief, Caliber did none of this
19   regarding all other Class members.

20   109.   Plaintiffs and other Class members, as a result of the Defendant's
21   violations of RESPA and their failures to respond as required as set forth herein,
22   suffered actual damages and are entitled to recover their actual damages from
23   Caliber.  In addition, due to Defendant's pattern and practice of RESPA violations,
24   Plaintiffs and other Class members are also entitled to recover additional damages
25   of up to two thousand dollars ($2,000) for each violation, as well as attorneys' fees
26   and costs.

27

28

**SIXTH CLAIM FOR RELIEF**

**(Violation of the Truth In Lending Act)**

(By Plaintiffs Against Invesco and LSF9)

110.   Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

111.   Plaintiffs bring this claim individually and on behalf of the Class against Defendants Invesco and LSF9.

112.   Invesco and LSF9 are parties subject to the provisions of TILA.

113.   The Federal Truth in Lending Act (TILA) 15 U.S.C. § 1641(g) (specifically Section 131g, as implemented by Regulation Z, 12 CFR 1026.39) requires that a borrower be provided notice of each transfer or sale of a borrowers mortgage loan by the new owner of the loan within thirty (30) days of the sale or transfer.

114.   Invesco and LSF9 violated TILA by, *inter alia*, failing to disclose to Plaintiffs and Class members each sale or transfer of their mortgage loan.

115.   Invesco and LSF9 systematically and pervasively engaged in violations of TILA to the detriment of members of the Class.

116.   As a direct result of Invesco and LSF9's illegal conduct, Plaintiff and Class members were injured and damaged in that they were

117.   Pursuant to 15 U.S.C. Section 1640(a) of TILA, Plaintiffs and all other Class members are entitled to actual and statutory damages, plus reasonable attorneys' fees and costs of suit, an amounts to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**

**(Violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*)**

(By Plaintiffs Against Defendants Caliber, US Bank, and LSF9)

118.   Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

119.   Plaintiffs bring this claim individually and on behalf of the Class pursuant to Section 17200 et seq. of the Business & Professions Code, the Unfair Competition Law ("UCL") against Defendants Caliber, US Bank, and LSF9.

120.   California's UCL prohibits unfair competition, which includes any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200 et seq.

121.   A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

122.   Defendants committed, and continue to commit, "unlawful" business acts or practices by, among other things, violating the Homeowner Bill of Rights ("HBOR"), Cal. Civ. Code Section 2920 et seq.; California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code Section 1788 et seq.; the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2605, and the Federal Truth in Lending Act (TILA) 15 U.S.C. § 1641(g).

123.   As described above, Defendants' conduct is unlawful in that it violated Section 2924.17 of the HBOR.  Specifically, Section 2924.17(a) of the California Civil Code mandates "A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence."

124.   Further, Section 2924.17(b) of the California Civil Code provides that "Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information."

125.   Defendants, prior to taking the actions herein alleged, did not ensure as required by statute that they had reviewed competent and reliable evidence substantiating their legal authority to record, either themselves or on their behalf, the Notice of Default and other related documents specified herein.

126.   As described above, Defendants' conduct is also unlawful in that it violated California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") which prohibits creditors and debt collectors from, among other things, making false, deceptive, or misleading representations in an effort to collect a debt. Cal. Civ. Code Section 1788 et seq.

127.   As alleged above, Defendants' conduct also violated various provisions of RESPA (12 U.S.C. § 2605(e)) as well as TILA (15 U.S.C. § 1641(g)).

128.   A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

129.   Defendants committed, and continue to commit, "unfair" business acts or practices by, among other things:  (a) engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to the Plaintiffs and all other Class members; (b) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and all other Class members; and (c) engaging in conduct that undermines or violates the spirit or intent of the laws that this Complaint invokes.

130.   Specifically, Defendants Caliber, US Bank, and LSF9 engaged in unfair business acts or practices in violation of the UCL by representing themselves as having the legal right to collect payments from Plaintiffs and Class members and to initiate foreclosure on their real properties.  As alleged herein, Defendants Caliber, US Bank, and LSF9 falsely represented the character and amount of debts to the Plaintiffs and Class members and used false representations

1  or deceptive means, including the knowing preparation of false endorsements and

2  assignments of the Note, to collect or attempt to collect those debts. Accordingly,

3  Defendants could not demonstrate that they had the legal right to enforce the

4  alleged debt nor could they validate the correct amount of any debt on behalf of

5  the purported owner of the underlying Notes or Deeds of Trust on Plaintiffs' and

6  other Class members' homes.

7      131.   These acts and practices are unfair because they caused Plaintiffs and

8  all other Class members to falsely believe that Defendants were the proper party to

9  collect debts on behalf of or as the owner of the beneficial interest under the Deed

10  of Trust and, ultimately, had the authority to initiate foreclosure on their home.  As

11  a result, Plaintiffs and all other Class members were induced to believe that

12  Defendants Caliber, US Bank, and LSF9 were able to legally collect on their

13  mortgage debt, as well as the parties with the legal capacity to institute the

14  recording of NODs on their homes, forcing Gigi, and on information and belief,

15  Class members, to incur fees and costs and take legal action to prevent the

16  threatened foreclosure on her home.

17      132.   The gravity of harm to Plaintiffs and Class members resulting from

18  these unfair acts and practices outweighed any business justifications for

19  Defendants' deceptive acts and practices.  By committing the acts and practices

20  alleged herein, Defendants engaged in unfair business practices within the

21  meaning of the UCL.  Such acts and violations have not abated and will continue

22  to occur unless enjoined.

23      133.   A business act or practice is "fraudulent" under the UCL if it is likely

24  to deceive members of the consuming public.

25      134.   Defendants   Caliber,   US   Bank,   and   Defendant   LSF9's

26  misrepresentations regarding their rights, standing and authority, as set forth

27  above, were false, misleading, and likely to deceive the public within the meaning

28  of California Business and Professions Code Section 17200.

135.   Defendants' misrepresentations were made with knowledge of their effect, and were done to induce Plaintiffs and Class members to believe that they owed Defendants monies and that Defendants had the right to foreclose on their home when they did not have such legal right because they did not have the standing or authority to collect, nor could they validate the amount of the debt allegedly owed.

136.   Plaintiffs and all other Class members reasonably relied and reasonably expected that Defendants would comply with the law, to deal honestly with then and to comply with the provisions of the Rosenthal Act and the HBOR.

137.   As further described above, Section 1692e of the FDCPA provides that a debt collector may not use any "false, deceptive, or misleading representation or means in connection with the collection of any debt including: (2) The false representation of (A) the character, amount or legal status of any debt…." 15 U.S.C. § 1692e (2)(A).

138.   Section 1692e (10) further provides that "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt..." is conduct in violation of that Section. Id. at § 1692e (10).

139.   On information and belief, and as alleged herein, Defendants Caliber, US Bank, and LSF9 knew or had reason to know that documents and information, including but not limited to the assignments of deed of trust or substitutions of trustee, and endorsements of the Promissory Note, were not valid to establish their legal right to collect payments from Plaintiffs and Class members or to seek to foreclose on their properties. They also knew they lacked documentation that would enable them to validate the nature and extent of the debt allegedly owed by Plaintiffs and Class members, which Defendants were seeking to collect. Accordingly, Defendants cannot establish their legal right to collect payments from Plaintiffs and Class members or their right to foreclose upon the properties.

1    140.   Without the ability to establish their legal right to collect payments or

2  foreclose, Defendants have engaged in debt collection activities in violation of the

3  Rosenthal Act, California Civil Code Section 1788.10 et seq., and by implication,

4  the FDCPA, by, among other things:  (a) misstating the character, amount or legal

5  status of the debt they collected or sought to collect from Plaintiffs and Class

6  members; (b) threatening to take or did take action (initiating foreclosure) that

7  cannot be legally taken given their inability to establish their authority to do so;

8  and (c) using false representations or deceptive means (representing they had

9  standing to take the actions they were taking when the rights they seek to enforce

10 were not assigned to them) to collect or attempt to collect the debt from Plaintiffs

11 and Class members.

12   141.   As alleged herein, Defendants Caliber and LSF9 falsely represented

13 the character and amount of debts to the Plaintiffs and Class members and used

14 false representations or deceptive means to collect or attempt to collect those debts

15 in that they could not demonstrate that they had the legal right to collect any debt

16 on behalf of the purported owner of the underlying Note or Deed of Trust on the

17 property.

18   142.   Plaintiffs and all other Class members have suffered injury in fact and

19 suffered monetary loss as a direct result of Defendants' conduct described herein.

20 Specifically, Plaintiffs and all other Class members have incurred and will

21 continue to incur legal fees and costs in order to prevent the wrongful loss of their

22 property.

23   143.   Under Section 17203 of the Business & Professions Code, Plaintiffs

24 and all Class members are entitled to (a) restitution and disgorgement of all

25 unjustly retained monies; (b) equitable relief; (c) pre- and post-judgment interest at

26 the highest rate allowable by law; (d) payment of attorneys' fees and costs

27 pursuant to Section 1021.5 of the California Code of Civil Procedure; and (e) any

28 other relief this Court deems proper.

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf and the Class, pray for relief as follows:

1.    On all claims for relief for compensatory damages;

2.    On the First Claim for Relief for an injunction restraining the material violations of the HBOR by the Defendants, including an injunction preventing Defendants from proceeding with any foreclosure with respect to Class members' properties until such time as Defendants have corrected and remedied the material violations of the HBOR as set forth herein;

3.    On all claims for relief for costs of suit incurred herein;

4.    For civil penalties pursuant to statute and/or reasonable attorneys' fees where provided for by law and according to proof; and

5.    For any and all other and further relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all claims so triable.

ZIMMERMAN REED, LLP

Dated: May 17, 2017            By:    /s/ Christopher P. Ridout
                                      Christopher P. Ridout
                                      Hannah P. Belknap
                                      2381 Rosecrans Ave., Suite 328
                                      Manhattan Beach, CA 90245
                                      Tel. (877) 500-8780
                                      Fax (877) 500-8781

                                      David N. Lake
                                      LAW OFFICES OF DAVID N. LAKE, APC
                                      16130 Ventura Boulevard, Suite 650
                                      Encino, California 91436
                                      Tel. (818) 788-5100

1

Fax. (818) 788-5199

2

*Attorneys for Plaintiffs and all others
similarly situated*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT